IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


ANTHONY WHITING,

    Petitioner,

vs.                                                      Case No. 4:08cv301-RH/WCS

WALTER A. McNEIL,

    Respondent.

                                 /

## REPORT AND RECOMMENDATION TO DISMISS § 2254 PETITION

Petitioner, represented by counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 with supporting exhibits. Doc. 1. An order to show cause was entered, directing Respondent to answer to respond to the petition, and giving Petitioner the opportunity (but not requiring him) to file a reply. Doc. 3. Respondent filed a motion to dismiss, with supporting exhibits, seeking dismissal of the petition as untimely. Doc. 8. Petitioner did not file a reply.

As the record provided by Respondent is more comprehensive, references to exhibits are to those submitted by Respondent unless otherwise noted. *See* doc. 3, p. 2 and n. 2 (noting that Respondent is generally required to provide the record, but

Respondent need not provide duplicates and could reference Petitioner's exhibits by letter and page number in ECF) (electronic case filing).

There is a one year limitations period for filing a § 2254 petition. 28 U.S.C. § 2244(d)(1). The period generally runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," unless a later commencement date applies. § 2244(d)(1)(A). Petitioner has not asserted a later commencement date, and none of the alternative dates provided in the statute seem applicable.[1]

The limitations period is tolled for the time during which a "properly filed" application for relief is pending in state court. § 2244(d)(2). The time may also be equitably tolled, as addressed ahead.

Petitioner challenges the judgment of the Second Judicial Circuit, Leon County, case number 2003CF2364. Doc. 1, p. 1. He claims his attorney, Richard Greenberg, was ineffective for advising him to enter an "open" or "straight up" plea (*i.e.*, without a plea agreement), rather than advising him to accept a written plea offer of ten years imprisonment followed by five years probation or an alleged unwritten offer of seven years imprisonment. *Id.*, pp. 8-16 (grounds one and two).[2]

---

[1] Later dates which commence the one year period include the date on which an unconstitutional impediment which prevented the applicant from filing is removed; the date on which the right asserted was recognized by the Supreme Court and made retroactive on collateral review; and the date on which the factual predicate for the claim could have been discovered with the exercise of due diligence. § 2244(d)(1)(B)-(D).

[2] Petitioner asserts as ground one that "Petitioner received ineffective assistance of counsel when his trial counsel advised the Petitioner to enter a plea involuntarily and not to accept the State's offer of 10 years followed by 5 years probation because defense counsel could get the court to sentence him to less time." Doc. 1, p. 8. As ground two he claims, "Petitioner received ineffective assistance of counsel when his trial counsel

Petitioner was charged with two counts of aggravated child abuse by great bodily harm. Ex. A, p. 1 (copy of the information). Count one charged that on or about May 13, 2003, Petitioner committed a battery upon a child by fracturing the left femur and right tibia; count two charged that on or about July 7, 2003, Petitioner committed a battery on a child by breaking the left arm humerus. *Id.* The child was his daughter, five months and seven months old at the time of counts one and two, respectively.[3]

Petitioner entered an open plea and was sentenced to 20 years incarceration followed by 10 years probation. Ex. A, pp. 33-46 (plea form, sentencing scoresheet, and judgment of March 15, 2004). A separate order of probation was entered on March 19, 2004. *Id.*, pp. 49-55.

In announcing the sentence of 20 years, the judge said "I can't justify, in my mind, anything different. I think this was one of the most horrible cases I have yet to read or see." *Id.*, p. 172. Had there been any evidence that this was done intentionally, the judge said she would sentence Petitioner to life "and not blink." *Id.*, pp. 173, 176.

---

told him not to accept the State's offer of 10 years followed by 5 years probation because defense counsel could get the court to sentence him to less time by presenting the court a basis for downward departure of 'unsophisticated manner.' " *Id.*, p. 12. These are essentially two variations of one ineffectiveness claim.

[3] At sentencing, the prosecutor argued that "[t]his is a crime of violence against a baby that was five months old when two of its legs were broken, and seven months old when its arm was broken, Judge." Ex. A, pp. 156-157. He noted how unusual it is for a child under a year of age to have any fractures, and that this child had been examined and found not to have brittle bones. *Id.*, p. 157. For the leg fractures, the child was basically in a full cast body cast. *Id.*, p. 159. In announcing sentence Judge Dekker said she started reading the file over the weekend as there was no victim to speak, "[the victim in this case is five months old. At the time this occurred she was completely, totally reliant on adults to care for her." *Id.*, p. 171.

Case No. 4:08cv301-RH/WCS

Petitioner, still represented by Greenberg, filed a motion to reduce sentence on March 19, 2004. *Id.*, pp. 47-48. It was asserted that a plea offer of ten years had been made, which was later reduced to seven years, and that Petitioner had a low average IQ and relied solely on "counsel's clearly misguided belief that the court would not sentence him in excess of the state's offer." *Id.*, p. 47. Counsel said this was not a case where the accused wanted to "roll the dice" by turning his fate over to the jury, but "[i]nstead he trusted his counsel's advice and was severely punished for doing so." *Id.*, p. 48.

The motion was denied without prejudice following a hearing on March 29, 2004. Ex. F (trial court docket), p. 5. The trial docket does not indicate if a separate order was entered, but the docket report included with the Rule 3.850 record on appeal reflects a "text" entry for denial of the motion, so presumably it was denied at the hearing without a separate written order. Ex. A, "docket report on case process," p. 4.[4] A transcript of this hearing (if it was transcribed) is not before the court.

---

[4] Ex. A is the record on appeal of the Rule 3.850 proceeding. There are three pages (after the cover page) of the index, including docketing dates, the document referenced, and the page number of the record on appeal. It is these record page numbers the court referenced above (beginning with p. 1, the information). Attached to the index to the record on appeal (but before p. 1 of the actual record) is a six page "docket report on case process" which was run on July 24, 2006. This was apparently done in preparation of the record on appeal, following the notice of appeal filed on June 30, 2006. Ex. B. This is similar but not identical to the docket supplied as Ex. F (for example, specifying a "text" entry). References to this document, part of Ex. A but preceding p. 1 of the record, are to "docket report," and references to the trial court docket are to Ex. F.

On October 2, 2004 (the date of his signature),[5] Petitioner filed a pro se motion pursuant to FLA. R. CRIM. P. 3.850.  Ex. A, pp. 56-65.  It was docketed on October 7, 2004, as "reopen post conviction motion 3.850" and "reopen post conviction motion 3.850 motion for post conviction relief pro se."  Docket report p. 4; Ex. F, p. 5.  In that motion, Petitioner asserted ineffective assistance of counsel for advising him that he (counsel) believed the court would sentence him to less time than offered by the state.  *Id.*, p. 60.  Petitioner claims that counsel never met with the judge to determine this, and Petitioner learned for the first time on March 29, 2004 (the date of the hearing on counsel's motion to correct), that the judge would have met with counsel prior to the plea and advised that Petitioner should take the offer because the court would probably sentence him to more than ten years.  *Id.*  Petitioner claimed that had he known this, he would not have entered an open plea and would have accepted the offered plea agreement.  *Id.*, pp. 60-61.  For relief, Petitioner asked to withdraw his open plea and accept the plea offer.  *Id.*, p. 63.

On the court's own motion, the court directed the court reporter to transcribe the plea and sentencing proceedings.  *Id.*, p. 66 (order of October 28, 2004).  The transcripts were filed.  Docket report p. 4; Ex. F, p. 5.  Petitioner then sought and was granted voluntary dismissal without prejudice by order of January 27, 2005.  Ex. A, pp. 67-70.

Petitioner filed another pro se motion to correct illegal sentence on February 8, 2005, claiming conviction for both counts violated double jeopardy, that the offense was a

---

[5] Under the prison mailbox rule, the court considers Petitioner's pro se documents filed on the date of delivery to prison officials for filing, as indicated by his signature or a date stamp of the institution.  See  Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001); Thompson v. State, 761 So.2d 324, 325 (Fla. 2000).  Hereafter, references to filing dates of pro se documents are to this date, whereas references to documents filed by counsel on Petitioner's behalf are to the date received by the court for filing.

felony of the second (rather than first) degree, and asserting improper scoring under the state sentencing guidelines. *Id.*, pp. 71-80. The motion was denied by order of June 2, 2005. *Id.*, p. 81-84 (attaching the information and probable cause statement).

Petitioner filed a pro se Rule 3.850 motion on January 30, 2006, docketed on February 2, 2006. Ex. A, pp. 85-115. Along with insufficiency of evidence claims, he again asserted ineffective assistance of counsel based on the advice to enter an open plea rather than to accept the plea offer. *Id.*, pp. 90-91. Counsel was appointed by order of February 7, 2006. *Id.*, p. 116. The state filed a response. *Id.*, pp. 117-122. Petitioner filed a pro se response which was stricken as unauthorized by the court. *Id.*, pp. 123-127.

On June 20, 2006, the date of the evidentiary hearing, counsel filed an amended Rule 3.850 motion. *Id.*, pp. 128-132. The transcript of the hearing is not part of the 3.850 record on appeal, but a copy was supplied by Petitioner. Doc. 1, Ex. I.

After the hearing, the court entered an order denying Petitioner's pro se motion as amended by counsel. Ex. A, pp. 133-194 (with attachments in support, including the plea and sentencing transcripts). Denial of the motion was affirmed without opinion on August 28, 2007, and the mandate issued on September 11, 2007. Exs. C and D.

This § 2254 petition was filed in this court by counsel on July 3, 2008. Petitioner concedes his petition is untimely under the statute, but claims entitlement to equitable tolling. Doc. 1, pp. 3-8.[6] Counsel asserts that "Petitioner's filings appear to be

---

[6] Respondent asserts that the judgment became final on April 14, 2004, that the Rule 3.850 motion filed October 2, 2004, tolled the period until voluntary dismissal was granted on January 27, 2005, that the motion to correct sentence tolled the time from its filing on February 8, 2005, to the time to appeal its denial expired on July 5, 2005, and that the one year accordingly expired on January 3, 2006. Doc. 8, pp. 5-6. Respondent

unorganized but are consistent and diligent," and summarizes all his filings in state court (already set forth above).  *Id.*, p. 4-6.  It is contended that Petitioner was without the resources to obtain counsel throughout the post conviction proceedings.  *Id.*, p. 6.  Then, "after the District Court [of Appeal] affirmed the trial court's order, the Petitioner's father died enabling him to retain counsel to prosecute a Writ of Habeas from proceeds Petitioner received from his father's life insurance policy."  *Id.*  Petitioner does not specify the date of his father's death or when he received insurance proceeds.

Petitioner alleges that extraordinary circumstances prevented him from timely filing.  *Id.*, pp. 6-8.  Specifically, he has an IQ of 74-83, which is in the "borderline range," referencing an attached report (addressed ahead).  *Id.*, p. 6.  He claims that due to his low IQ, his numerous state court motions were incoherent and improper, and only after appointment of counsel in the state court did his claims make any sense.  *Id.*  Petitioner asserts that his low IQ prevented him from understanding the criminal justice process, specifically what had to be filed in state court, how to file a § 2254 petition, and the limitations period.  *Id.*, p. 7.  Petitioner argues that his Rule 3.850 motion filed on October 2, 2004, was so incoherent he had to withdraw it, and his second motion was again incoherent and necessitated the appointment of counsel.  *Id.*, pp. 7-8.

---

asserts that the Rule 3.850 motion filed on January 30, 2006, could not toll the period because it had already expired.  *Id.*, p. 6.  The court will assume this is correct, as Petitioner conceded untimeliness in the petition and made no argument in reply.  Moreover, even if that calculation could be off by a few days, the fact that the mandate in the later Rule 3.850 proceeding issued on September 11, 2007, and Petitioner waited until July 3, 2008, over nine months later, to file his § 2254 petition takes the § 2254 filing far outside the one year period.

Case No. 4:08cv301-RH/WCS

In support of his inability to file, Petitioner relies on a report prepared by clinical psychologist James Brown, dated March 4, 2004.[7]  Doc. 1, p. 6 and Ex. D.  This report was also attached to the Rule 3.850 motion filed January 30, 2006, and references are to the report as it appears in Respondent's Exhibit A, pp. 108-114.[8]  Petitioner had been referred for an evaluation by counsel George Drumming, counsel for Petitioner in proceedings by the Department of Children and Families (DCF) (to terminate his parental rights with respect to the victim of the two counts of aggravated child abuse).  The report reflects that Petitioner drove himself to the evaluation sessions, arrived on time, and was appropriately groomed and dressed.  *Id.*, p. 110.  It was noted that he "appeared to be in good general health" and "to have average intelligence."  *Id.*  His "potential for common sense reasoning appeared to be within normal limits."  *Id.*  He denied being under the influence of drugs or alcohol when the child was injured, but admitted to feeling frustrated during one of the incidents because he did not have any marijuana.  *Id.*

Petitioner's intelligence was found to be between borderline and low average, and his common sense reasoning was in the average range.  *Id.*, p. 111.  Dr. Brown determined that Petitioner was of a personality type normally defensive and over-controlled in suppressing angry feelings, but "at risk for reacting impulsively following a build-up of frustrations."  *Id.*  His usual inhibition of angry feelings and acting out reduced the risk for impaired parenting, but the "potential for thinking and learning significantly

---

[7] This was after the plea of February 5, 2004, but before sentencing on March 15, 2004.  Mr. Greenberg referenced the report at sentencing, to support his argument that this was not the type of case calling for incarceration, but for probation or a suspended sentence with counseling.  Ex. A, pp. 166-169.

[8] Those record numbers also appear on the copy supplied by Petitioner as Ex. D (doc. 1-5 in ECF).

below average," presented a "risk factor for making errors in judgment when in stressful situations. His potential for common sense reasoning, however, is in the average range for dealing with daily problems of living." *Id.*, p. 112. His drug use was a risk factor, and if he had problems in his relationship with the child's mother (not demonstrated) or his judgment was impaired by drugs or a craving due to inability to obtain drugs, "the risk of injuring his child whether intentional or unintentional is significantly increased." *Id.*

A petitioner must show both extraordinary circumstances and due diligence to establish entitlement to equitable tolling. Lawrence v. Florida, 549 U.S. 327, 336, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007) (Lawrence II)[9] (assuming without deciding that equitable tolling is available, petitioner must show diligence and "'that some extraordinary circumstance stood in his way' and prevented timely filing"), *quoting* Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 1814, 161 L.Ed.2d 669 (2005). "Equitable tolling is an extraordinary remedy which is typically applied sparingly." Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000) (citation omitted); Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008) (*quoting* Steed); Lawrence v. Florida, 421 F.3d 1221, 1226 (11th Cir. 2005) (Lawrence I) (*quoting* Steed). Petitioner "bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence." Brown, 512 F.3d at 1307 (citation omitted). "Because of the difficult burden,

---

[9] This affirmed the Eleventh Circuit's opinion in Lawrence v. Florida, 421 F.3d 1221 (11th Cir.2005) (Lawrence I). Certiorari was granted to address whether a state court application was still "pending" after the state court entered a final judgment in a post conviction proceeding, where a petition for writ of certiorari was filed with the United States Supreme Court. The Court found it was not "pending" in state court for § 2244(d)(2) purposes, and also rejected equitable tolling arguments.

[the Eleventh Circuit] has rejected most claims for equitable tolling." Diaz v. Secretary for Dept. of Corrections, 362 F.3d 698, 701 (11th Cir. 2004) (collecting cases).

In Lawrence I, the court found that while mental incompetence may support equitable tolling, there must be a "causal connection" between the alleged incapacity and the inability to timely file; that petitioner had a "full scale IQ [of] 81" and "suffered from mental impairments his entire life" did not establish entitlement to equitable tolling. 421 F.3d at 1226-27 (collecting cases).

Here too, there is no showing of Petitioner's full scale IQ of 78, between borderline and low average,[10] in any way made him unable to timely file. Petitioner was found to be in the average range for exercising common sense in dealing with daily problems of living, and seemed to be of average intelligence. This is not a situation where it would have taken time for Petitioner to discover he had a possible ground for post conviction relief, as his attorney filed a motion soon after sentencing and a hearing was held shortly thereafter. Petitioner claims it was at that hearing, which was only two weeks after sentencing, that he discovered a plea conference could have been held. It is clear that he had the factual basis for his postconviction claim before the judgment was even final.[11]

---

[10] Petitioner was found to have a verbal IQ of 86, performance IQ of 74, and a full scale IQ of 78. Ex. A, p. 110. There was a 95% probability that if retested he would score between 74-83, or between the borderline and low average IQ range. *Id.*, p. 111.

[11] It may be that at the hearing, the court denied Greenberg's motion because a claim of counsel error is more properly raised collaterally, by Rule 3.850 motion. See Bruno v. State, 807 So.2d 55, 63 (Fla. 2001) ("As a rule, [a defendant] can only raise an ineffectiveness claim via a rule 3.850 motion, even if the same underlying facts also supported, or could have supported, a claim of error on direct appeal.").

Indeed, it was apparent at *sentencing* that counsel did not expect such a long sentence. *See* Ex. A, pp. 173-176 (counsel advising the court at the time of sentencing that, at one point, there was an offer as low as seven years, and arguing that compared to sentences of violent or career criminals, 20 years was "just way beyond the pale," that in counsel's 20 years of practicing "a 20 year sentence is way at the far end" in state court cases). *See also* doc. 1, Ex. I, pp. 36 (counsel testified that "the Court will recall that I was absolutely astounded and dumbfounded when the court imposed" the 20 year sentence).[12]

Moreover, Petitioner was capable of filing a Rule 3.850 motion raising essentially the same ineffective assistance of counsel claim in October of 2004. The motion was sufficient to prompt the court to sua sponte order the transcripts. Petitioner voluntarily dismissed it, but that does not somehow negate his ability to file it. His arguments in state court, if not models of clarity, are certainly coherent.

Finally, there is no basis at all for tolling the period for the months between the Rule 3.850 mandate and filing of the § 2254 petition. By the time the mandate issued, the arguments had already been raised, argued by counsel, rejected following an evidentiary hearing, and articulated in the appellate briefs. Forms for filing habeas corpus petitions are available to prisoners, and Local Rule 5.1(J)(2) of this court

---

[12] Counsel further explained that he "believed that the Court would see what I was seeing [from his interaction with Petitioner] in the case and would go below the guidelines." *Id.*, p. 33. Legally, he felt that a lesser sentence was supported on the facts in this case, "[a]nd, you know, this case has bothered me from the day Mr. Whiting was sentenced. And I feel like I totally let him down by having him enter a plea without knowing ahead of time what the Court was going to do." *Id.*, pp. 33-34. He said since Petitioner's sentencing, "I absolutely will not do an open plea without at least seeing if we can have a plea conference first." *Id.*, p. 35.

*requires* that pro se habeas petitions be filed on forms. There is no showing that immediately following the mandate, Petitioner was unable or incapable of submitting a form petition setting forth a summary of facts to support his ineffective assistance of counsel claims.

Petitioner concedes untimeliness under § 2244(d), fails to establish entitlement to equitable tolling, and it is therefore respectfully **RECOMMENDED** that Respondent's motion to dismiss (doc. 8) be **GRANTED**, and the 28 U.S.C. § 2254 petition challenging the judgment of the Second Judicial Circuit, Leon County, case 2003CF2364 be **DISMISSED** as untimely.

**IN CHAMBERS** at Tallahassee, Florida, on July 9, 2009.

  S/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**